UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROY C. CASEY                                          CIVIL ACTION

VERSUS                                                NO: 09-6681

GUITAR CENTER, INC. & GUITAR                          SECTION: "A" (4)
CENTER STORES, INC.

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 44)** filed by Defendants Guitar Center, Inc. and Guitar Center Stores, Inc. Plaintiff Roy C. Casey opposes the Motion. The Motion, set for hearing on June 9, 2010, is before the Court on the briefs without oral argument. For the reasons that follow, the Motion is **DENIED**.

## I. BACKGROUND

This case concerns a breach of contract claim by Plaintiff Roy C. Casey ("Plaintiff") against Defendants Guitar Center, Inc. and Guitar Center Stores, Inc. ("Defendants"). Plaintiff began working as an independent consultant for Defendants in 1999. Affidavit of Roy C. Casey, Exhibit A to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ¶ 2 ("Casey Affidavit"). Plaintiff was first hired to negotiate and implement a private label credit card

program for one of Defendants' wholly owned subsidiaries. *Id.* at ¶ 12. Plaintiff states that he was initially compensated on an hourly basis, and that Defendants negotiated with him over time to change and reduce his rate of compensation. *Id.* at ¶ 13. Plaintiff also states that, throughout his employment with Defendants, he encouraged them to implement a warranty program. *Id.* at 12. According to Plaintiff's affidavit, Defendants eventually agreed to allow him to design and implement a warranty program, which the parties referred to as the "Extended Service Plan" or "ESP," that was to be administered by a third party. *Id.* at ¶ 14.

Defendants eventually selected Aon Innovative Solutions, Inc. ("Aon") to be the ESP administrator. *Id.* at ¶ 19. Plaintiff contends that, in July 2001, while draft agreements were circulating between Plaintiff, Defendants, and Aon, Plaintiff and Defendants' Vice President, Andy Heyneman, agreed to the terms of his compensation regarding his work on the ESP program. *Id.* at ¶ 22. Plaintiff states that, in exchange for his design and implementation of the ESP program, Defendants agreed to pay Plaintiff 7.5% of the warranty program's costs once the program was put in place on a national basis. *Id.* at ¶¶ 14-15, 23. Defendants' "costs" would be "the portion of the revenue from the extended warranty plan sale that [Defendants] pa[y] for the cost of insurance and administration of each contract sold before any vendor rebates from the insurance company/administrator." *Id.* at pg. 6 n. 1.

Plaintiff states that Defendants expressed some anxiety that the IRS might improperly classify Plaintiff as an employee, rather than an independent contractor, subjecting them to greater tax liability. *Id.* at ¶ 19. Per Plaintiff, it is for this reason that his compensation was structured so that the ESP administrator, Aon, would pay Plaintiff his 7.5% commission directly,

even though Defendants would remain ultimately responsible for his commission. *Id.* at ¶ 20. Plaintiff contends that, once his right to commission payments accrued with the national implementation of the ESP program, his right to continue receiving a percentage of Defendants' costs would only terminate upon their cessation of the ESP program for one full year. Casey Affidavit at ¶¶ 25-26.

Defendants dispute these contentions. Defendants argue that Aon was paying Plaintiff directly because his agreement was with Aon, not Defendants. Memorandum in Support of Guitar Center, Inc.'s and Guitar Center Stores, Inc.'s Motion for Summary Judgment ("Motion"), pg. 4. Defendants also argue that the only provision of their agreement with Plaintiff that addresses their obligation to him provides that they were to pay him a $3,000 a month retainer during the term of the agreement, from May of 2001 until the national implementation of the ESP program. *Id.* at pg. 4. Defendants assert that their obligations to Plaintiff therefore terminated in April of 2003 when they implemented the ESP program on a national basis. *Id.*

Plaintiff began receiving his commission after the national implementation of the ESP on April 30, 2003. Casey Affidavit at ¶ 32. Plaintiff states that Defendants informed him on March 5, 2009 that they intended to select a new program administrator on September 30, 2009, and that his commission payments would end on that date. *Id.* at 4. Plaintiff filed this lawsuit on September 15, 2009, after which Defendants removed it to this Court on October 7, 2010. *See* Notice of Removal (Rec. Doc. 1). Defendants now move for summary judgment.

## II. STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant," show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id., citing Anderson*, 477 U.S. at 248. The court must draw all justifiable inferences in favor of the non-moving party. *Id., citing Anderson*, 477 U.S. at 255. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id., citing* Fed. R. Civ. Proc. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993), *citing Anderson*, 477 U.S. at 250.

## III. DISCUSSION

Defendants argue in their Motion that this case can be resolved by a relatively straightforward exercise in contract interpretation. Defendants' contract with Plaintiff states that they agreed to pay him $3,000.00 per month from May, 2001 until the national implementation

of the ESP program. Independent Contractor Agreement between Roy C. Casey and Guitar Center Stores, Inc. at pg. 3, Exhibit 1 in Support of Casey Affidavit ("Guitar Center Contract."). Thus, Defendants argue, the national implementation of the ESP program was the end of their obligation to Plaintiff, and Plaintiff's arguments to the contrary are inconsistent with the plain meaning of the contract. Motion at pg. 4. Plaintiff retorts that the Guitar Center Contract only memorializes part of his agreement with Defendants. Plaintiff insists that the Guitar Center Contract was not an integrated contract, that it must be interpreted in conjunction with Defendants' contract with Aon, and that, under the Guitar Center Contract, Defendants' obligations to him will continue to run until they discontinue the ESP program for a period of at least one year. Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition"), pg. 2.

Contract interpretation under Louisiana law "requires judicial determination of the common intent of the parties to the contract."[1] *Thermo Terratech v. GDC Enviro-Solutions, Thc.*, 265 F.3d 329, 334 (5th Cir. 2001), *citing Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1994); 630 So.2d 759, 763; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007), *quoting Cadwallader v. Allstate Insurance Co.*, 848 So.2d 577, 580 (La. 2003). "The parties' intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the [contract], unless the words have a technical meaning." *Louisiana Ins. Guar. Ass'n,* 630 So.2d at 763.

---

[1] Both parties agree that this dispute is governed by Louisiana Law. *See* Motion at pg. 3; Opposition at pp. 3-4.

When a contract is "clear, explicit, and lead[s] to no absurd consequences, then no further interpretation may be made in search of the parties' intent." *Stephenson v. Petrohawk Properties, L.P.*, 45,296 (La. App. 2 Cir. 6/2/10); ___ So.3d ___, *citing* La. Civ. Code Art. 2046. When a term in a contract is reasonably susceptible to different meanings, it should be interpreted as having the meaning that "best conforms to the object of the contract." *Stephenson*, ___ So.3d ___, *citing* La. Civ. Code Art. 2048. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Stephenson*, ___ So.3d ___, *citing* La. Civ. Code Art. 2050.

"Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless there is ambiguity in the written expression of the parties' common intent." *Rogers v. Horsehoe Entertainment*, 32,800 at pg. 11 (La. App. 2 Cir. 8/1/00); 766 So.2d 595, 603. Whether or not a contract is ambiguous is a matter of law. *Town of Haynesville, Inc. v. Entergy Corp.*, 42,019 (La. App. 2 Cir. 5/2/07); 956 So.2d 192. A contract is ambiguous when it "lacks a provision bearing on [the] issue [of intent], the terms of [the] written contract are [fairly] susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." *Campbell v. Melton*, 2001-2578 at pg. 6 (La. 5/14/02); 817 So.2d 69, 75. Louisiana law also permits parol evidence "to complete an incomplete contract." *Condrey v. SunTrust Bank of Georgia*, 429 F.3d 556, 563-64 (5th Cir. 2005), *citing Davis v. Stern*, 348 So.2d 726, 727 (La. Ct. App. 1977). ("Where the contract itself is incomplete or silent in respect to the obligations assumed by one of the parties, parol evidence may be admitted to show the complete agreement.").

The key provision of the Guitar Center Contract provides:

TERM OF ESP AGREEMENT

This agreement shall commence with the execution of this agreement by both parties, the effective date of compensation is 5/01/01 and shall continue until Guitar's PPC program is implemented on a national basis.[2] Upon termination of this agreement, Guitar's [Defendants'] obligation to pay Representative [Plaintiff] directly terminates and the insurance company/administrator will make all payments to Representatives [Plaintiff] for on-going services related to Guitar's ESP program.[3]

Guitar Center Contract at pg. 3. Defendants argue that, under this provision, their obligation to Plaintiff terminated when the ESP program "[was] implemented on a national basis." Motion at pg. 2; Guitar Center Contract at pg. 3. The provision goes on to say, however, that "[u]pon termination of this agreement, Guitar's obligation to pay representative *directly* terminates and the insurance company/administrator will make all payments to Representatives for on-going services related to Guitar's ESP program." Guitar Center Contract at pg. 3 (emphasis added). Defendants' construction of this provision reads out the term "directly." A reasonable construction of this provision is that, upon national implementation of the ESP program, only Defendants' direct obligation to Plaintiff terminates, implying that they retained some sort of indirect obligation to Plaintiff. *Id.* Other provisions in the Guitar Center Contract also support

---

[2] The Guitar Center Contract does not define the term "PPC program," though it does appear to refer to the ESP program that is the subject of the Contract.

[3] It is unclear why the contract uses the plural "Representatives" at the end of the clause and the singular "Representative" elsewhere in the clause. It is possible that this was in error, and also possible that the contract contemplates that some future "Representative" might take Plaintiff's place in the ESP program.

7

this interpretation.

The Guitar Center Contract provides that "[f]or Representative's [Plaintiff's] scope of work after Guitar's [Defendants'] ESP program is implemented on a national basis, Guitar [Defendants] hereby authorizes Representative [Plaintiff] to enter into an agreement directly with the insurance company/administrator for the ESP program wherein Representative [Plaintiff] shall be paid directly by the insurance company/administrator." Guitar Center Contract at pg. 1. This provision intimates that Plaintiff had some sort of ongoing "scope of work" even after the national implementation of the ESP program, and that he would be compensated for this work directly by the insurance company/administrator. The Guitar Center Contract also appears to draw some distinction between the "scope of work" and Plaintiff's responsibilities under the Guitar Center Contract. After enumerating a series of steps constituting the "scope of work" Plaintiff was to perform, the Guitar Center Contract states "[i]rrespective of the individual steps listed above as scope of work, Representative's [Plaintiff's] ultimate responsibility under the terms and conditions of this contract will be considered satisfied by Guitar [Defendants] upon the implementation of an ESP Program for Guitar [Defendants] on a national basis." *Id.* at pg. 3. Notably, this provision speaks of the end of Plaintiff's obligation to Defendants, not the end of Defendants' obligation to Plaintiff. This provision also supports the reasonable inference that the Guitar Center Contract contemplates an ongoing obligation to Plaintiff on behalf of Defendants after the national implementation of the ESP program.

Based on the above-cited provisions, and the absence of any "merger," or "integration"

clause affirmatively stating that the Guitar Center Contract represented the entire agreement between the parties, it seems clear from the four corners of the Guitar Center Contract that it is not a complete, or integrated, agreement. *See Condrey*, 429 F.3d at 564. Therefore, the Court will also consider the provisions of the agreement Defendants entered into with Aon concerning the ESP program (the "Aon Contract") because this contract bears on the relationship Plaintiff, Defendants, and Aon entered into after the national implementation of the ESP program. The Aon Contract affirms, contrary to Defendant's argument, that a reasonable trier of fact could find that Defendants' obligations to Plaintiff did not cease with the national implementation of the ESP program. The Aon Contract states that "GC [Defendants] warrants and represents to Company [Aon] that Roy Casey [Plaintiff] . . . is an independent consultant retained by GC [Defendants], and is under GC's [Defendants'] sole and exclusive supervision and control limited to the authority expressly granted to him by this Agreement." Aon Contract, pg. 5, Exhibit 3 in support of Casey Affidavit. Further, the Aon Contract states that Aon will remit a commission to Plaintiff "at the request of GC, and on behalf of GC." *Id.* at pg. 7. These provisions indicate that Defendants remained obligated to Plaintiff even after they ceased paying him directly, and that Aon was merely a conduit for payments made to Plaintiff "on behalf of" Defendants.

The Guitar Center Contract's "Term of ESP Agreement" clause states only that Defendants' obligation to pay Plaintiff "directly" terminates upon the national implementation of the ESP Program. The Guitar Center Contract elsewhere states that it is Plaintiff's responsibility to Defendants, rather than Defendants' responsibility to Plaintiff, that ends "upon the [national]

implementation of an ESP program." Given the reference to Plaintiff's relationship with Defendants after the national implementation of the ESP program and the absence of any description of that relationship, the Court finds that the Guitar Center Contract is incomplete. Defendants' contract with Aon is relevant to understanding Defendants' continuing obligation to Plaintiff because it addresses the relationship among Plaintiff, Defendants and Aon after the national implementation of the ESP program. The Aon Contract states that, although Aon assumes responsibility for paying Plaintiff, it does so only to fulfill an obligation on behalf of Defendants. A reasonable trier of fact could therefore find, contrary to the argument asserted by Defendants, that Defendants' obligation to Plaintiff did not end with the national implementation of the ESP program, but is in fact ongoing. It would therefore be improper to extinguish Plaintiff's breach of contract claim at the summary judgment stage.

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 44)** filed by Defendants Guitar Center, Inc. and Guitar Center Stores, Inc. is **DENIED.**

This 30th day of June 2010.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE